UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WESLEY B. AMES,<br><br>                              Plaintiff,<br><br>      v.<br><br>RANDALL S. AMES and DARLEEN AMES,<br><br>                              Defendants. | NO:  2:13-CV-0405-TOR<br><br>ORDER DISMISSING ACTION |

A bench trial was held in the above-entitled matter on November 21, 2016. Plaintiff Wesley B. Ames and Defendants Randall and Darleen Ames appeared pro se.  The Court heard from both parties, has reviewed the record and documents therein, and is fully informed.

//

//

//

//

ORDER DISMISSING ACTION ~ 1

# BACKGROUND[1]

The instant case arises out of a loan between brothers and a course of events that pitted a family against itself.  Plaintiff Wesley Ames filed the instant action on July 14, 2013, asserting breach of contract and related claims, and a claim for intentional infliction of emotional distress against Defendants Randall Ames and Darleen Ames, husband and wife.  ECF No. 1.  The breach of contract and related claims are governed by California law; the intentional infliction of emotional distress claim is governed by Washington law.

Defendants asserted counterclaims in their answers (ECF Nos. 35 at ¶¶ 90-104; 62 at ¶ 77), but chose not to pursue them at trial.  ECF No. 115 at 3. Thus, Defendants' counterclaims are **DISMISSED**.

On or about January 8, 1991, Randall[2] sought a loan from his older brother, Wesley (who then lived in California), to be used by Randall to purchase soybeans

---

[1]     While the submissions by the parties are voluminous, a brief summary of the facts is adequate for settling the dispute.  For the purposes of this order, the salient facts are considered in the light most favorable to Plaintiff.

[2]     The Court refers to the parties' first names when necessary for clarity.  The court intends no disrespect.

ORDER DISMISSING ACTION ~ 2

to be used in the operation of a business in Lithuania.[3]  ECF No. 101, Pl. Exhibits

1-4.  The parties exchanged e-mails, but no formal contract was drafted, as both

parties agreed the e-mails were sufficient.  *Id.* Ex. 2 at 1; Ex. 3 at 1.  The parties

expected the loan would be repaid within a year, but the parties agreed that Randall

did not have to pay until financially able.[4]  ECF No. 60 at ¶ 9 ("Defendants chose

to utilize an extended loan term until they had sufficient money.").  Plaintiff

disbursed two loans to Randall in 2001, each for $10,000.  ECF No. 101, Pl.

Exhibits 5-6.  According to Plaintiff, Defendants were able and willing to pay the

loan as early as 2006.  ECF No. 115 at 4 ("2006 to either 2008 or '09").  Plaintiff

contends that Randall then offered to pay, but Wesley said "why don't you just

keep it for the time being . . . get yourself more stable."  *Id.*  Plaintiff then contends

---

[3]      The parties dispute whether the loan is a personal loan or a loan to the

business.  Plaintiff contends the loan was a personal loan.  ECF No. 60 at ¶ 7.

Defendants contend the loan was to the Lithuanian business.  *See* ECF No. 62 at

¶ 12; Ex. 2 at 2 ("when the business had sufficient cash reserves it would

reimburse me for the beans and I would transfer the money back to you.").  That

disputed issue is not material to this decision.

[4]      Defendants denied the loan included provision for repayment beyond one

year.  ECF No. 62 ¶ 9.  That issue is not material to the Court's decision.

ORDER DISMISSING ACTION ~ 3

1  that in 2012, Defendants recanted their willingness, and denied any personal

2  liability.  ECF No. 60 at 5.

3       Meanwhile, "beginning at least prior to December 20, 2010," Defendants

4  allegedly "engaged in an intentional, extended, concerted, reprehensible, and

5  outrageous campaign to *destroy the close familial relationship between Roy and*

6  *Rubye Ames (the Parents) and their second son, Wes Ames . . .*"  ECF No. 60 at

7  ¶ 49 (emphasis added).  As a result, "Randy and Darleen Ames did, in fact,

8  progressively destroy the relationship . . . thereby causing great emotional damage

9  to Wes Ames . . ."  *Id.* at ¶ 53.  While Plaintiff asserts a litany of factual issues

10  underlying this "campaign," this allegation sums up the overarching claim.

11       A bench trial was held November 21, 2016.  Both parties appeared and

12  addressed their issues to the Court.  The Court admitted Plaintiff's Exhibits 1

13  through 7, while reserving Defendants' authenticity objections.  The Court

14  discussed with Wesley Ames the remaining causes of action, the legal issues which

15  would require dismissal and invited Wesley Ames to submit any further testimony

16  or evidence necessary to his case.  After a brief recess, Plaintiff made several

17  proffers of evidence and then confirmed that there was no additional testimony or

18  evidence necessary.

19  //

20  //

ORDER DISMISSING ACTION ~ 4

For the reasons discussed below, Plaintiff's causes of action, including all contract and related claims, and the claim for intentional infliction of emotional distress, are **DISMISSED**.

## DISCUSSION

### A. Breach of Contract (California Law)

Both parties characterized the contract for the loan as a mixed oral and written contract. ECF No. 115 at 2-4. In California, the statute of limitations for an obligation or liability founded upon a written instrument is four years. Ca. Civ. Pro. § 337. The statute of limitations for an action upon contract not founded upon an instrument of writing is two years. *Id.* § 339. Since the critical terms are disputed and not in writing, the Court would find this to be an oral contract. But, whether written or oral, the statute of limitations has long expired on the contract.

Under California law, the statute of limitations for a "payable on demand" loan runs from the time the loan is given. *O'Neil v. Magner*, 22 P. 876, 877 (Cal. 1889). In California:

> (a) A promise or order is "payable on demand" if it (1) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (2) does not state any time of payment.

> (b) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of (1) prepayment, (2) acceleration, (3) extension at the option of the holder, or (4) extension to a further definite

1    time at the option of the maker or acceptor or automatically upon or after a
2    specified act or event.

3    California Commercial Code § 3108.  However, when loan repayment is

4    conditioned on the ability of the creditor to make payments, "no cause of action

5    accrues until the condition is performed; that is to say, until the debtor is able to

6    pay." *Van Buskirk v. Kuhns*, 129 P. 587, 588 (Cal. 1913); *Curtis v. City of*

7    *Sacramento*, 11 P. 748, 749 (Cal. 1886) ("But if the debtor promises to pay the

8    debt when he is able . . . the creditor can claim nothing more than the promise

9    gives him."); *cf. Ranieri v. Terzano*, 457 N.E.2d 906, 909 (Ohio Ct. App. 1983) ("a

10   provision that the notes are payable 'if and when defendants were able to pay' is so

11   uncertain that it fails to create a condition for payment . . . At most, such terms

12   mean that payment will be made in a reasonable time.") (citing *Union Properties,*

13   *Inc. v. McHenry*, 50 N.E.2d 315, 318 (Ohio 1943)).

14        At trial, Plaintiff proffered that Defendants were able to pay the debt as early

15   as 2006.  ECF No. 115 at 4.  Accepting Plaintiff's proffer, Plaintiff's cause of

16   action accrued, at the latest, in the year 2006.  Plaintiff did not file the complaint in

17   the instant action until 2013, seven years later.  ECF No. 1.  Taking Plaintiff's own

18   statements as true, the statute of limitations has run—even assuming the longer

19   statute of limitations applies and the cause of action accrued at the time Defendants

20   were able to pay, rather than at the time the loan was made.

1    At trial, Plaintiff proffered that Defendants made oral statements in 2004,

2    2005 or 2006, 2009 and 2011, about their intent to repay him.  Plaintiff admits

3    there are no longer any writings that document these statements.  In California,

4    only a writing will extend the statute of limitations, not oral statements.  Ca. Civ.

5    Pro. § 360.  The oral statements do not extend the statute of limitations here.

6    The claim for breach of contract is **DISMISSED**.

7    **B.  Quasi Contract / Unjust Enrichment (California Law)**

8    In California, unjust enrichment is "not a cause of action ... or even a

9    remedy, but rather a general principle, underlying various legal doctrines and

10    remedies.  It is synonymous with restitution."  *McBride v. Boughton,* 123

11    Cal.App.4th 379, 387 (2004).  Importantly, "unjust enrichment is an action in

12    quasi-contract, which does not lie when an enforceable, binding agreement exists

13    defining the rights of the parties."  *Paracor Finance, Inc. v. General Elec. Capital*

14    *Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d

15    605, 613 (1975) ("There cannot be a valid, express contract and an implied

16    contract, each embracing the same subject matter, existing at the same time.")

17    (citations omitted).  If a contract existed at some time, unjust enrichment is only

18    available when the contract was procured by fraud and is thus unenforceable or

19    ineffective.  *McBride,* 123 Cal.App.4th at 388.

20

Here, accepting Plaintiff's evidence, a valid, binding contract does exist—although enforcement is limited because the statute of limitations has run.  The contract was not procured by fraud (see below).  As a result, Plaintiff's unjust enrichment claim fails and is **DISMISSED**.

### C.  Conversion (California Law)

In California, conversion is the wrongful exercise of dominion over the property of another.  *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  *Id.* (citations omitted).  An action in trover or conversion is an action for damages.  14A Cal. Jur. 3d Conversion § 1.

Notably, "[t]rover does not lie for a mere breach of an executory contract," and "[a] debtor who does nothing more than fail to pay a debt is not guilty of conversion."  14A Cal. Jur. 3d Conversion § 19 (citing *Hilmer v. Hills*, 70 P. 1080 (Cal. 1902); *Yukon River Steamboat Co. v. Gratto*, 69 P. 252 (Cal. 1902); *Stafford v. Oil Tool Corp.*, 284 P.2d 937 (Cal. Ct. App. 1955); and *Baxter v. King*, 253 P. 172 (Cal. Ct. App. 1927)).  "It is true that sometimes money can be treated as specific property, and where identified can form the basis of an action for conversion, and might also be the subject of an action for the specific recovery of personal property. But where the money or fund is not identified as a specific thing

the action is to be considered as one upon contract or for debt and not for conversion." *Baxter*, 253 P. at 172 (citations omitted).

Plaintiff asserts a claim of conversion, alleging Defendants converted the money loaned by "improperly retaining the money for their own use" by "failing to repay the loan and then falsely denying any obligation to repay the loan." ECF No. 60 at ¶¶ 36-38. These allegations amount to no more than a breach of contract. Moreover, the money allegedly owed is not "identified as a specific thing," as is required for a claim for conversion of funds. *See id.*; *Baxter*, 253 P. at 172 (citations omitted). Holding otherwise would convert every breach of contract into a claim for conversion where the other party disputes its liability. That is not the law. The claim for conversion is **DISMISSED**.

## D. Fraud (California Law)

In California, the elements of fraud are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Lazar v. Superior Court*, 909 P.2d 981, 984–85 (Cal. 1996) (citations omitted). Two theories of fraud include: "fraud in the *execution* of the client agreements, and fraud '*permeating*' the agreements." *Rosenthal v. Great Western Fin. Securities Corp.*, 926 P.2d 1061, 1073 (Cal. 1996). Fraud in the execution "goes to the inception or execution of the agreement, so that the

promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all." *Id.* (internal quotation mark and citations omitted). Fraud in the inducement occurs when "the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed." *Id.* (internal quotation mark and citations omitted). Importantly, in the latter case, the consent must be *induced* by fraud— that is, the fraud must exist at the time of entering the contract.

Plaintiff alleges Defendant is liable for fraud by entering into the loan agreement with the intent to defraud Plaintiff, reasoning Defendant lied about Defendant's ability and willingness to repay the loan. ECF No. 60 at ¶¶ 40-46. Although Plaintiff argues this deception occurred at the time of entering the agreement, Plaintiff's own statements at trial belie this contention, as Plaintiff stated Defendants were personally willing to pay the loan amount as early as 2006. ECF No. 115 at 4. This would evidence that Defendants did not form the intent to escape liability until sometime after the loan was entered, assuming Plaintiff's version of the evidence is accepted. As a result, there was no fraudulent inducement—only an alleged change in position sometime after the contract was formed. Other than what Plaintiff describes as Defendant's false promises to pay occurring in subsequent years, no other fraudulent conduct or false statements were proffered to support this claim. The claim for fraud is **DISMISSED**.

### E.  Intentional Infliction of Emotional Distress (Washington Law)

Plaintiff contends that Defendants conducted an outrageous campaign to destroy the close familial relationship between Plaintiff and his parents, Roy and Rubye Ames, ECF No. 60 at ¶ 49, for which he seeks damages.

Washington first recognized the intentional tort of outrage—also known as the tort of intentional infliction of emotional distress—in 1975.  *Kloepfel v. Bokor*, 149 Wash.2d 192, 198–99 (2003) (citing *Grimsby v. Samson*, 85 Wash.2d 52 (1975).  The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.  *Reid v. Pierce County*, 136 Wash.2d 195, 202 (1998) (citing *Dicomes v. State*, 113 Wash.2d 612, 630 (1989)).  These elements were adopted from the Restatement (Second) of Torts § 46 (1965) by the Washington Supreme Court in *Grimsby v. Samson*, 85 Wash.2d at 59–60.

> Any claim of outrage must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  But the tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  In this area, plaintiffs must necessarily be hardened to a certain degree of rough language, unkindness and lack of consideration.

*Strong v. Terrell*, 147 Wash.App. 376, 385 (2008) (internal citations, brackets, and quotation marks omitted); *Kloepfel*, 149 Wash.2d at 196.

Washington courts recognize the right of a parent to bring a claim for alienation of a *minor* child's affection under the umbrella of the tort of intentional infliction of emotional distress. *Strode v. Gleason*, 9 Wash.App. 13, 19–20 (1973) ("We hold that a parent has a cause of action for compensatory damages against a third party who maliciously alienates the affections of a *minor* child.") (emphasis added). Importantly, the court was careful to limit the recover to loss of affection from a "minor" child, specifically excluding the adult child-parent relationship from its purview. *See id*. On the other hand, Washington has barred a claim for intentional infliction of emotional distress for loss of affection from a spouse by a third party. *Wyman v. Wallace*, 94 Wash.2d 99, 105 (1980). Washington has yet to address whether a child—let alone an adult child—can bring a claim for intentional infliction of emotional distress for alienation of the child-parent relationship.

"[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Westlands Water Dist. v. Amoco Chemical Co*., 953 F.2d 1109, 1111 (9th Cir. 1991) (citation omitted). An intermediate state appellate court decision is "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Notably, the claims for alienation of spousal affection (now barred in Washington) and alienation of the minor child's affection stem from common law. *Wyman v. Wallace*, 15 Wash.App. at 395 (1976) ("The action for alienation of affections, insofar as it pertains to relationships between spouses, is an action carried into the law of Washington by its adoption of the common law of England."), aff'd, 94 Wash.2d 99 (1980); *Strode v. Gleason*, 9 Wash.App. at 15 ("The common law held liable anyone who intentionally interfered with the custody of children by abducting a child, enticing a child away or harboring a child who had left home against the wishes of the parent."). On the other hand, a claim for loss of parental affection by the child—whether minor or not—did not exist at common law. *Gaver v. Harrant*, 557 A.2d 210, 211 (Md. Ct. App. 1989) ("A cause of action allowing a minor child to recover for loss of a parent's society and affection was unknown at early common law."). Although some states began recognizing a cause of action for a *minor* child's loss of parental society and affection in the late 1970s, *see id.* (citing *Berger v. Weber*, 267 N.W.2d 124, 125 (Mich. Ct. App. 1978), aff'd, 303 N.W.2d 424 (Mich. 1981)), there appears to be no case allowing for such a claim by an *adult* child.

Indeed, according to the American Law Reports, there is no case where an *adult* "child" has successfully brought suit for alienation from his or her parents' affections:

> It seems noteworthy that in the few cases in which an *adult* "child" was suing directly for alienation of his parent's affections, or in which it was an *adult* "child" whose affections allegedly had been alienated from his parent, recovery has been denied, and that in the only case in which recovery has been allowed in a direct action by a parent for alienation of the affections of a child, the court formulated a rule of law in terms of the affections of a *minor* child.

60 A.L.R.3d 931 (emphasis added) (citing *Coulter v Coulter*, 214 P. 400, 402 (Colo. 1923) (rejecting adult child's claim for alienation of mother's affection by third party); *Cole v. Cole*, 177 N.E. 810 (Mass. 1931) (no cause of action lies where the defendant (the brother to plaintiff) allegedly "prejudiced the mind of his mother by misrepresentations and misstatements and . . . attempted to procure from her a complete renunciation and rescission of the affection and agreement hitherto enjoyed and existing between [the mother and adult son]."); *Garza v. Garza*, 209 S.W.2d 1012, 1015 (Tex. Ct. App. 1948) ("It is our considered opinion that children in this State do not have and cannot maintain a cause of action against a person for enticing or causing their father to leave them."); *French v. Safeway Stores, Inc.*, 430 P.2d 1021 (Or. 1967) (no cause of action for alienation of affection between mother and her adult son and daughter-in-law); and *Strode v. Gleason*, 9 Wash.App. at 20 ("We hold that a parent has a cause of action for

ORDER DISMISSING ACTION ~ 14

compensatory damages against a third party who maliciously alienates the affections of a *minor* child.")); *see also Miller v. Currie*, 50 F.3d 373, 376 (6th Cir. 1995) (forbidding plaintiff's claim for interference with a family relationship for the loss of her mother's love, companionship, society, instruction, guidance and consortium, and inheritance).

Because no court has recognized such a claim, and the right did not exist at common law, Washington would likely not recognize Plaintiff's *adult* child claim for intentional infliction of emotional distress for loss of parental companionship. Moreover, the trend in Washington, as evidenced by its approach in *Wyman*, is toward limiting the scope of claims based on loss of affection in the familial setting, not expanding them. *Wyman v. Wallace*, 94 Wash.2d at 104–05. The limitation to *minor* children in *Strode* also suggests Washington does not want to delve into the realm of the *adult* child–parent relationship. *Strode v. Gleason*, 9 Wash.App. at 20. Finally, this holding is consistent with the tendency of courts to avoid entertaining claims involving interfamilial warfare. *See, e.g., Richard P. v. Superior Court*, 202 Cal.App.3d 1089, 1094 (1988) ("We do not believe that the law should provide a basis for such interfamilial warfare.").

It matters not that Plaintiff is couching an unrecognized alienation of affection claim as a tort of outrage. The label Plaintiff pins to his claim does not establish or revive a barred cause of action. The Washington Supreme Court has

rejected just such a relabeling where the plaintiff brought a tort of outrage claim. *Lund v. Caple*, 100 Wash.2d 739 (1984) ("We believe, however, that the policies underlying *Wyman* require us to go beyond the mere labels on appellant's claim and consider the nature of his claims. . . . As such, this lawsuit is so similar to an alienation of affections action that as a matter of policy it falls within the prohibitions of *Wyman*. . . ."); s*ee also Strock v. Pressnell*, 527 N.E.2d 1235, 1242–43 (Ohio 1988) ("Ohio courts have repeatedly rejected attempts by a plaintiff to avoid the untoward effects of a legal bar by pleading alternative theories of recovery in lieu of the barred action. . . . we hold the torts of alienation of affections and criminal conversation, which were abolished. . . . are not revived by the recognition of the independent tort of intentional infliction of emotional distress.")

Plaintiff brought forward no legitimate support for the claim otherwise. Without any support in the alternative, the claim for intentional infliction of emotional distress is **DISMISSED**.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1.  Plaintiff's claims against Defendants are **DISMISSED with prejudice**.

2.  Defendants' counterclaims against Plaintiff are **DISMISSED with prejudice.**

3. All pending pretrial motions, ECF Nos. 73, 74, 75, 76, 86, 89, 90, 98, 102, 108, and 110, are **DENIED** as moot. All pretrial objections are **OVERRULED** as moot.

The District Court Executive is hereby directed to enter this Order, enter Judgment accordingly, provide copies to the parties and **CLOSE** the file.

**DATED** November 30, 2016.



THOMAS O. RICE
Chief United States District Judge